UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
ANGELA PADUANI,

**NOT FOR PUBLICATION**

**ORDER**
16-cv-2300(LDH)

                Plaintiff,

    -against-

CAROLYN W. COLVIN
as Commissioner of Social Security,


                Defendant.
-------------------------------------------------------------x
LaSHANN DeARCY HALL, United States District Judge:

        Plaintiff Angela Paduani appeals, pursuant to 42 U.S.C. § 405(g), the final decision of Defendant Carolyn W. Colvin, the Acting Commissioner of Social Security (the "Defendant") denying her Social Security Disability ("SSD") benefits under Title II of the Social Security Act ("SSA"). On May 1, 2017, Plaintiff moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), requesting that the Court reverse Defendant's decision and find Plaintiff disabled and entitled to disability benefits. That same day, Defendant cross-moved for judgment on the pleadings, requesting that the Court affirm the Defendant's final decision finding that Plaintiff was not disabled from November 17, 1986, her alleged onset date, through December 31, 1992, Plaintiff's date last insured.

        Plaintiff filed her application for SSD benefits on December 29, 1994. (Tr. 81-84.)[1] Plaintiff's application has been denied multiple times despite several hearings, requests for review by the Appeals Council, and appeals to the United States District Court for the Eastern District of New York over the past thirty years. (*See generally* Tr.) After the last remand from

---

[1] Citations to "Tr." refer to the certified copy of the administrative record of proceedings filed by the Commissioner as part of her answer.

this Court, the administrative law judge ("ALJ") found the following: (1) Plaintiff was insured under the SSA through December 31, 1992; (2) Plaintiff had not engaged in substantial gainful activity during the period from November 17, 1986 to December 31, 1992; (3) Plaintiff's right knee impairment status post-surgery, major depressive disorder, lumbar degenerative disc disease, personality disorder, and obesity qualified as "severe impairments"; (4) Plaintiff's impairments and/or combination of impairments did not meet or medically equal the severity of a listed impairment; and (5) Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, except she was limited to occasional climbing, balancing, stooping, crouching and crawling and could perform a job with no close interpersonal contact with the general public. (Tr. 1100-16.)

For the reasons stated on the record at the August 3, 2017 oral argument and set forth below, the Court denied Plaintiff's motion for judgment on the pleadings, and granted Defendant's motion for judgment on the pleadings affirming Defendant's findings that Plaintiff was not disabled.

## I. Exclusion of Plaintiff's Depressive Disorder

Plaintiff's primary argument on appeal was that the ALJ erred in assessing her mental RFC. (Pl.'s Mem. Supp. of Mot. J. Pleadings, ECF No. 21, 17-22.) Specifically, Plaintiff maintained that the ALJ's reliance on the opinion of one consulting expert to the exclusion of another was in error. (*Id*. at 17-22.) The Court disagreed.

The record in this case contains no opinion from a treating physician regarding Plaintiff's alleged mental impairments. Instead, the ALJ had before him only the opinions of two consultative medical experts, Dr. Sharon Grand and Dr. Alfred Jonas. "When there is no treating physician's opinion, the Commissioner must still consider whether the consultative opinions are

supported by and consistent with the other evidence in the record." *Daniels v. Colvin*, No. 14-CV-02354, 2015 WL 1000112, at *17 (S.D.N.Y. Mar. 5, 2015). That is exactly what occurred here.

Dr. Jonas did not examine Plaintiff, but he conducted a review of Plaintiff's medical record. The record demonstrated that Plaintiff was diagnosed with dysthymia and personality disorder not otherwise specified ("NOS"). (Tr. 451-52, 465.) The record further revealed that Plaintiff took care of her niece and mother, could drive for a half hour to an hour without difficulty, climbed the stairs to her house, washed dishes, watered plants, and did laundry, spent three to five hours per day reading, watched television for about three hours, attended church regularly, and volunteered from 6:00 a.m. to 6:00 p.m. or 9:00 p.m. (Tr. 41-43, 49, 55-56, 67-68, 72-73.) Ultimately, Dr. Jonas found that Plaintiff's only limitation with regard to her mental impairment was a moderate restriction in her ability to work with the public due to a personality disorder. (Tr. 1003-11, 1112.) The ALJ assigned "some weight" to Dr. Jonas' opinion that Plaintiff's only real limitation was social, that she "could function when she wanted to," and that she was "limited in her ability to deal with the general public and perform teamwork with co-workers." (Tr. 1112.)

Unlike Dr. Jonas, Dr. Grand found that Plaintiff had marked limitations caused by a diagnosis of major depressive disorder. (Tr. 812-14, 1111-12.) Specifically, Dr. Grand found that Plaintiff had "severe major depressive disorder" from the alleged onset date to July 1991, and "had anhedonia, appetite and sleep disturbance, decreased energy, difficulty concentrating, marked restrictions in activities of daily living, moderate difficulties in concentration and no periods of decompensation," as well as "trouble working with others." (Tr. 814-19, 1111-12.) The ALJ assigned "little weight" to Dr. Grand's opinion because the record was devoid of

3

evidence to support her conclusions about Plaintiff's limitations. (Tr. 1111-12.) Moreover, the ALJ found that Dr. Grand incorrectly noted that Plaintiff terminated treatment for her mental impairments in July 1991, when she actually terminated treatment on December 2, 1990. (Tr. 1111-12.)

The ALJ was entitled to rely on Dr. Jonas' opinion. This is particularly so given the absence of a functional opinion regarding Plaintiff's mental abilities from any treating physician, Dr. Jonas' specialization in psychiatry, and the consistency of his opinion with the record. *Vargas v. Comm'r of Soc. Sec.*, No. 16-CV-0484, 2017 WL 2838165, at *6 (N.D.N.Y. June 29, 2017) (finding ALJ was entitled to rely on consulting physician's opinion "given the absence of a functional opinion regarding Plaintiff's mental abilities from any treating physician or other source").

Conversely, Dr. Grand's opinion is not supported by substantial evidence in the record. There is only one document, an intake form from St. John's University Psychological Services Center from July 1989, that lists "major depression" as the diagnostic impression. (Tr. 488.). However, other documents during the same period indicate that Plaintiff was actually diagnosed with dysthymia and personality disorder NOS. (Tr. 451-52, 465.) In other words, Dr. Grand's conclusion that Plaintiff had a major depressive disorder is inconsistent with substantial evidence in the record. Dr. Grand's opinion that Plaintiff had marked limitations in areas such as activities of daily living and moderate difficulties in concentration is similarly unsupported by the record as evidenced by the activities in which Plaintiff engaged as discussed above. (Tr. 41-43, 49, 55-56, 67-68, 72-73.)

It is well settled that the court must defer to the Commissioner's conclusions regarding the weight of conflicting evidence. *See Cage v. Comm'r of Social Sec.*, 692 F.3d 118, 122 (2d

4

Cir. 2012) (citing *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998)). If the Commissioner's findings are supported by substantial evidence, which is "more than a mere scintilla," then they are conclusive and must be affirmed. *Ortiz v. Comm'r of Soc. Sec.*, No. 15-CV-3966, 2016 WL 3264162, at *3 (E.D.N.Y. June 14, 2016) (citing 42 U.S.C. § 405(g)). This is so, even if substantial evidence could support a contrary conclusion or where the court's independent analysis might differ from the Commissioner's. *See Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982)). Against this standard, the Court affirms the ALJ's findings regarding Plaintiff's mental impairment and his assessment of Dr. Jonas' and Dr. Grand's opinions.

## II. Reliability of Vocational Expert Testimony

Plaintiff also argued that the ALJ erred in relying on the unreliable testimony of vocational expert, Pat Green. (Pl.'s Mem. 22-24.) Ms. Green testified that given the set of functional limitations presented, Plaintiff could work as an addresser, a sorter, and a stuffer. Plaintiff argued that Ms. Green's testimony was unreliable because she failed to perform any independent analysis of job data for the positions she cited, but instead relied on a computer program. (Pl.'s Mem. 23-24.) Plaintiff also argued that Ms. Green's testimony was unreliable because a study commissioned by the SSA concluded that there were drastically fewer results for the job of an addresser than Ms. Green noted. (Pl.'s Mem. 24.) Plaintiff's arguments are unavailing.

"[A] vocational expert is not required to identify with specificity the figures or sources supporting h[er] conclusion, at least where [s]he identified the sources generally." *McIntyre v. Colvin*, 758 F.3d 146, 152 (2d Cir. 2014); *see also Galiotti v. Astrue*, 266 F. App'x 66, 68 (2d Cir. 2008) (rejecting plaintiff's argument that the ALJ erred in "finding the vocational expert

credible because he was unable to specify how he arrived at the number of jobs available in the economy for [certain] positions" and stating that "[t]he vocational expert identified the sources he generally consulted to determine such figures" and plaintiff "[did] not point[] to any applicable regulation or decision of this Court requiring a vocational expert to identify with greater specificity the source of his figures or to provide supporting documentation"); *Frazier v. Comm'r of Soc. Sec.*, No. 16 CIV 4320, 2017 WL 1422465, at *19 (S.D.N.Y. Apr. 20, 2017) (finding the ALJ had "an adequate basis for relying on [the vocational expert's testimony]" regarding the numbers of jobs existing in the national economy, where the vocational expert testified that "his job number estimates were provided by a private company called SkillTRAN, which derived its numbers from the 10-year Census"). Plaintiff cited to no authority, and the Court is aware of none, that provides that only one method of analysis of job data is preferred compared to others.

As to Plaintiff's argument regarding the number of jobs in the national economy as an addresser, the Court acknowledges Plaintiff's concern and is indeed sympathetic to this point. The Court recognizes that the position of addresser does not exist in the economy at the level it once did. However, even excluding the job of an addresser, the vocational expert found a number of other positions existed in significant numbers in the national economy that Plaintiff could perform. *Bavaro v. Astrue*, 413 F. App'x 382, 384 (2d Cir. 2011) ("the Commissioner need show only one job existing in the national economy that [Plaintiff] can perform" at the fifth step of the social security benefits analysis). Accordingly, Plaintiff's arguments regarding the reliability of Ms. Green's testimony fail.

### III. Conclusion

For the foregoing reasons and as stated on the record at oral argument, Plaintiff's motion for judgment on the pleadings is denied, and the Defendant's motion is granted. The Clerk of Court is respectfully requested to enter judgment accordingly and close this case.

SO ORDERED:

/s/ LDH
LaSHANN DeARCY HALL
United States District Judge

Dated: Brooklyn, New York
      September 29, 2017